969 F.2d 312
 Albert MEDLEY and Anne Medley, Plaintiffs-Appellants,
v.
CITY OF MILWAUKEE, Housing Authority of the City of
Milwaukee, William R. Drew, Ann Marie Steffen Oldenburg,
Edward W. Johnson, Rick Fieldbinder, United States of
America, Samuel R. Pierce, Jr., and Troy Grigsby,
Defendants-Appellees.
 No. 91-1963.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 14, 1992.
Decided July 17, 1992.
 
 Elizabeth Adelman (argued) and Jeffrey S. Hynes, Adelman, Adelman & Murray, Milwaukee, Wis., for plaintiffs-appellants.
 Hazel Mosley (argued), Office of the City Atty. and Stephen A. Ingraham, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for defendants-appellees.
 Before BAUER, Chief Judge, COFFEY and EASTERBROOK, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Albert and Anne Medley appeal the district court's entry of summary judgment in favor of the defendants on the Medleys' claim that the Housing Authority of the City of Milwaukee ("HACM") improperly debarred them from participating in HACM's federally-funded Rent Assistance Program ("RAP"). We affirm.
 
 I. FACTS
 
 2
 The Medleys are the owners of rental properties in the City of Milwaukee and are desirous of leasing their rental units to participants in HACM's Rent Assistance Program. We have described the Rent Assistance Program as follows:
 
 
 3
 "Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, authorizes the Secretary of the United States Department of Housing and Urban Development ('HUD') to establish various programs to 'aid[ ] lower-income families in obtaining a decent place to live and [to] promot[e] economically mixed housing.' These programs are financed by the federal government, regulated by HUD, and administered by state public housing agencies ('PHA's'). One such program--the rent assistance program--helps low-income families to obtain rental housing in the open market. Briefly, the program works as follows: HUD contracts with a local PHA to make available each year a sum of money for the payment of rent on behalf of a specified number of families with incomes below a certain amount. The PHA then distributes this money by contracting to pay each person who agrees to rent housing to one of these families a fixed percentage of the family's rent."
 
 
 4
 Simmons v. Drew, 716 F.2d 1160, 1161 (7th Cir.1983). The Housing Authority of the City of Milwaukee is Milwaukee's "PHA."
 
 
 5
 During 1981 the Medleys began contracting with HACM to rent their rental units to persons participating in the RAP, and during this period HACM and the Medleys executed a separate contract for each unit rented to a family in the program. The terms of the contract specified the "total monthly rent payable to the Owner" as well as the amount of the "housing assistance payment" the "PHA shall pay each month on behalf of the Family." In regard to alterations of the rental amount, the contracts provided:
 
 
 6
 "The Family's portion of the Contract Rent and the amount of housing assistance payment shall be determined by the PHA, and are subject to change during the term of this Contract in accordance with HUD regulations and other requirements. Any change shall be effective as of the date stated in a notification by the PHA to the Family and the Owner of such change."
 
 
 7
 (Emphasis added). The contract further stated:
 
 
 8
 "5. MONTHLY PAYMENT TO OWNER.
 
 
 9
 (a) The Owner shall be paid under this Contract on or about the first day of the month for which payment is due or as otherwise agreed. The Owner agrees that the endorsement on the check:
 
 
 10
 ....
 
 
 11
 (2) shall constitute certification by the Owner that:
 
 
 12
 ....
 
 
 13
 (iii) the Owner has not received and will not receive any payments or other consideration, from the Family, the PHA, HUD, or any other public or private source, for the unit beyond that authorized in this Contract and the Lease...."
 
 
 14
 The HUD Handbook at Section 9(d) states in pertinent part:"Program abuse by participating owners includes:
 
 
 15
 Collecting extra (side) payments in excess of the family's share of the rent or requiring the family to perform extraordinary services in lieu of payments. Note: The only extra payments which are legal are those for extra amenities which are not included in the rent for any other units in the building and are not included in the rent in other comparable apartment/houses. This could but does not necessarily include membership in a swimming pool or use of parking facilities. All side payments must be approved by the PHA."
 
 
 16
 (Emphasis original).
 
 
 17
 In late 1983, the Medleys rented units to Beverly Bush and Brenda Linwood under the Rent Assistance Program. On October 27, 1983, defendant William Ryan Drew, the executive director of HACM, sent the Medleys a letter reading:
 
 
 18
 "This is to confirm your conversation of Tuesday, October 25, 1983, with a member of the Rent Assistance Program staff, Michael Verrilli, regarding rent payments of the tenant, Beverly Bush, for the unit at 2541 North 28th Street....
 
 
 19
 "Ms. Bush had complained to Mr. Verrilli that you had demanded that she make rent payments in excess of the amount stated on her lease. Ms. Bush also provided Mr. Verrilli with a handwritten copy of a statement which indicates she is to make rent payments of $151.00 per month. On October 25, 1983, during your conversation with Mr. Verrilli you reiterated your intention of collecting $151.00 on a monthly basis from Ms. Bush. The collection of side payments for any amount in excess of that stipulated in the lease is illegal and prohibited by the Housing Assistance Payment Contract."
 
 
 20
 (Emphasis original). The Medleys disregarded the letter and continued to require excess payments from Ms. Bush as well as excess payments from Ms. Linwood. Several months later the Medleys instituted eviction proceedings against Ms. Bush and Ms. Linwood in state court for nonpayment of rent, allegedly with the encouragement of HACM staff person, defendant Edward Johnson. At the eviction hearing for Ms. Bush, Anne Medley testified as follows:
 
 
 21
 "Q Now, directing your attention to the leas[e] that's in front of you, this agreement on parking, was that agreement ever approved by the Rent Assistance Program, by the way?
 
 
 22
 A No.
 
 
 23
 Q Pardon me?
 
 
 24
 A No, because I think Mrs. Bush had stated that she didn't have a car.
 
 
 25
 Q Your answer is no?
 
 
 26
 A Okay.
 
 
 27
 Q So, your agreement with respect to parking was never approved by the Rent Assistance Program?
 
 
 28
 A Right. I don't think so."
 
 
 29
 In the eviction proceeding against Ms. Linwood, which immediately followed that of Ms. Bush, the court stated:
 
 
 30
 "There is a controversy regarding collateral matters in which the landlord plaintiff is seeking $50.00 for the rental of a garage space and also for the month of November. In the month of November, the defendant did not occupy the premises, did not have plans of occupying it, but this was a premium to the plaintiff so that the defendant could occupy the premises beginning in December. Likewise, the defendant had no garage and had no automobile, and this was also a premium payment to the landlord because the defendant was on Rental Assistance.
 
 
 31
 "This is a completely shocking case and, just as the one before, it is a method by which the landlord is gouging both the defendant and the City of Milwaukee and the taxpayers who are contributing to these funds. There is no excuse for charging for a garage which cannot possibly be used simply because the tenant is an indigent person and is getting monies from the Rental Assistance Program.
 
 
 32
 "This is contrary to what the landlord knows. She is an experienced person, and it's set forth in the contract prohibiting this practice. Notwithstanding, there is an application to the Court for collection of these monies, which is completely contrary to public policy. It's tragically an outrage. Likewise, seeking a premium to take a person who is on Rental Assistance to require the payment of an extr[a] month's rent falls into the same cat[e]gory.
 
 
 33
 "The plaintiff is certainly entitled to a fair rental, and the agreement that she enters into with the people at Rental Assistance and the tenant is an obligation that should be made, but nothing extraordinary in addition to that. This is a practice that I think shows such flagrant disregard that I can't imagine that anybody would wish to disclose the aspects of these business[ ] transactions in a public place and in a court of law, and it's one of those things that should publicity be given to it[,] it would be almost the basis for criminal prosecution.
 
 
 34
 "Be that as it may, the amount of monies that are due and owing the plaintiff in this case is three months rent.... There is an accumulation of $547.00, of which there is $156.00, I believe, due and owing.... The defendant has actually overpaid in a sum in excess of $380.00."
 
 
 35
 (Emphasis added). Three HACM staff members were present to hear Anne Medley's admission and the state judge's finding that the Medleys had violated the terms of their contract with HACM. Under Section 14(a) of the Medleys' contracts with HACM, violation of any provision of the contract constitutes a default. Section 14 provides: "Upon such determination [that a default has occurred], the PHA shall have the right to terminate this Contract, to terminate or reduce assistance payments or to take corrective action to achieve compliance, in its discretion or as HUD directs." As a result of Anne Medley's admission that she violated the contract in that she charged rent above and beyond that authorized by HACM, and the trial judge's finding that the Medleys were "gouging" the renters as well as the City of Milwaukee, HACM decided to bar the Medleys from future participation in the rental program. Although the contract between HACM and HUD does not require HUD's approval of HACM's decision to debar an owner from the Rent Assistance Program, HACM chose to request HUD's acquiescence. On March 27, 1984, William Drew addressed a letter to the federal defendant, Troy Grigsby, describing the Medleys' conduct and requested HUD's "concurrence in barring [the Medleys] from further participation in our program." Grisby responded to Drew's letter on May 8, 1984, informing Drew that "[t]his Department concurs with your request to bar these owners from further participation in the Rental Assistance Program." One week later HACM sent the Medleys a letter notifying them that they would be permanently banned from the Rent Assistance Program:
 
 
 36
 "This letter is to advise you of your permanent bar from participating in the City of Milwaukee Rent Assistance Program. This is a result of your failure to act in good faith in your negotiations with the Program and your efforts to collect excess payments from participating tenants. This was proven in Circuit Court on February 16, 1984, during your attempts to have two program participating tenants evicted from your rental units.
 
 
 37
 "The Rent Assistance Program will not accept any further Requests for Lease Approval forms completed by you and submitted to our office. In addition, the Program will not renew the ... remaining contracts you still have with the Program when they expire."[1]
 
 
 38
 On June 18, 1984, the plaintiffs filed a complaint with HUD alleging that HACM discriminated against them because of their race in setting their rental rates too low, refusing to grant increases in rent, refusing to pay for damages inflicted on the apartments by the tenants and in causing the loss of certain other tenants. The HUD complaint does not mention the Medleys' debarment from the rental assistance program, and the Medleys make no allegation that they ever submitted a claim for damages of any sort to HACM or the City of Milwaukee pursuant to the Wisconsin notice of claim statute, Wis.Stat. § 893.80(1)(b).
 
 
 39
 The Medleys filed an eight-count complaint in the Milwaukee County Circuit Court on May 10, 1990, alleging: 1) that the defendants violated the Medleys' property rights in that they debarred the Medleys from participation in the Rent Assistance Program without a hearing; 2) that the debarment of the Medleys from the program violated the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 et seq. and the accompanying regulations; 3) that the defendants established the amount of rent due the Medleys in an arbitrary and capricious manner that resulted in rent levels below those of comparable housing owned by other landlords; 4) that the defendants arbitrarily and capriciously refused to follow the regulations requiring HACM to reimburse the plaintiffs for damage to the premises caused by participants in the Rent Assistance Program; 5) that the Medleys' debarment constituted a breach of an agreement to allow them to participate in the Rent Assistance Program; 6) that the defendants breached their promise that the Medleys would participate in the Rental Assistance Program; 7) that the defendants interfered with the Medleys' contracts with their tenants; and 8) that the defendants harmed the Medleys' reputation and business through making false statements about their business procedures. All counts were alleged against the individual defendants in their official capacities only.
 
 
 40
 The United States removed the action to federal court pursuant to 28 U.S.C. §§ 1441(b) and 1446 on May 23, 1990, and thereafter each of the defendants moved the court for summary judgment or dismissal. The district court granted the defendants' motions for summary judgment; it held that HACM was the only proper defendant, that the plaintiffs failed to state a claim under § 1983 because the Medleys did not possess a liberty interest or property interest in participating in the Rent Assistance Program, and that all state claims against HACM were barred by the plaintiffs' failure to file a timely claim against HACM pursuant to Wis.Stat. § 893.80(1)(b). The Medleys concede that the district judge properly dismissed Counts Two through Eight against the federal defendants, but challenge the district court's dismissal of the § 1983 action as to all defendants; the appellants further contest the district judge's holding that they failed to comply with the mandates of Wis.Stat. § 893.80(1)(b).
 
 II. ISSUES
 
 41
 The issues on appeal are: 1) whether the district court committed reversible error in holding that the Medleys have no liberty interest in participating in the Rent Assistance Program;[2] and 2) whether the district court erred in holding that the Medleys failed to file a timely claim against the state defendants pursuant to the Wisconsin claim statute, Wis.Stat. § 893.80(1)(b). In view of our disposition of the merits, we need not address the appellants' arguments that the district court improperly dismissed the federal and city defendants.[3]III. LIBERTY INTEREST
 
 
 42
 The essence of the appellants' argument on the merits is that their debarment from participation in the Rent Assistance Program deprived them of a liberty interest because the debarment was based on charges that the Medleys were illegally collecting rental monies above and beyond the amounts set forth in the HACM approved leases. The Medleys assert that HACM deprived them of their alleged liberty interest without due process of law when it made the decision to debar them from participation in the Rent Assistance Program without prior notice and a hearing. The district court rejected the Medleys' liberty interest claim on the ground that "[l]iberty interests, including the right to work for a living in the common occupation of the community, are interfered with only when the government acts to prevent a person from engaging in a common occupation." The district court cited Scott v. Village of Kewaskum, 786 F.2d 338, 340-41 (7th Cir.1986), for its holding, wherein we defined "liberty" as that which "generally includes human abilities that do not depend on the government--freedom from restraint, the right to associate with others, the right to travel, and more important here the right 'to work for a living in the common occupations of the community.' " Id. at 340 (citation omitted). But we did not define interests as narrowly as the defendants would wish so as to limit them to governmental acts preventing a person from engaging in a common occupation of the community. Had we done so, we would be holding contrary to the Supreme Court's broad definition of liberty interests in Board of Regents v. Roth, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706-07, 33 L.Ed.2d 548 (1972), where the Supreme Court included "the right of the individual to contract" within its description of what constitutes a liberty interest. Id. (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). In rejecting Roth's liberty interest claim, the Supreme Court noted that if his case had involved allegations implicating his reputation, honor or integrity, the result might have been different. Subsequent cases have held that there is a liberty interest in not being barred from bidding on government contracts or seeking governmental employment when the basis for the bar is a charge of misconduct which in turn affects the reputation of the person or entity involved, and the bar may substantially affect future employment or contracting opportunities. See Larry v. Lawler, 605 F.2d 954 (7th Cir.1978); Old Dominion Dairy Products, Inc. v. Secretary of Defense, 631 F.2d 953 (D.C.Cir.1980).
 
 
 43
 The Medleys argue that their debarment on the basis of illegal overcharges creates a liberty interest similar to those found in Old Dominion Dairy and Larry. The initial fallacy of relying on these debarment cases is that the Medleys are neither bidding on a government contract nor seeking governmental employment; their claim is that they have a liberty interest in continued participation in an administrative program designed to provide housing for low income families. The appellants have failed to cite any cases where a court has found a liberty interest in a private party's participation in a government assistance program designed to provide benefits for a third party, and we are unaware of any such cases. The cases most analogous to the Medleys' situation are those dealing with Medicare providers' agreements with the Department of Health and Human Services to provide medical care and assistance for Medicare beneficiaries. See Case v. Weinberger, 523 F.2d 602, 606 (2d Cir.1975); Northlake Community Hospital v. United States, 654 F.2d 1234, 1242 (7th Cir.1981); cf. Continental Training Services, Inc. v. Cavazos, 893 F.2d 877, 893 (7th Cir.1990). But the beneficial services cases deal with a property interest in continued participation in the programs rather than a liberty interest, and the Medleys have abandoned their property interest claim through failing to argue it on appeal. Thus, the Medicare cases are inapposite to this appeal. The second flaw in the appellants' reliance upon the governmental contract and employment cases to establish a liberty interest in continued participation in the Rent Assistance Program is that HACM's debarment of the Medleys from the program did not foreclose their opportunity to contract with any local or state housing assistance programs or to lease their units to persons who were not in the Rent Assistance Program. The record fails to disclose the number of rental units the Medleys owned, but at the time HACM decided not to renew their contracts with the Medleys, only four of the appellants' units were leased to Rent Assistance Program participants. The Medleys' debarment did not "effectively put [them] out of business." Old Dominion Dairy, 631 F.2d at 963. The appellants' third error in relying on the government contract and employment debarment cases is that they have provided no explanation of how the actions of the defendants damaged their reputation. In order to possess a liberty interest in a debarment case, the plaintiff must demonstrate that his "good name, reputation, honor, or integrity is at stake because of what the government is doing to him...." Roth, 408 U.S. at 573, 92 S.Ct. at 2707 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). The appellants have not alleged that the defendants published the reason for the debarment to any one other than the Medleys, nor have they alleged that the defendants disclosed the grounds to other public housing agencies. See Perry v. FBI, 781 F.2d 1294, 1299 (7th Cir.1986) (en banc ). Any damage to the Medleys' reputation that might conceivably have occurred was brought on by Mrs. Medley's testimony in the eviction proceedings in state court. In chastising Mrs. Medley for charging a tenant rent above the amount established in the lease and the contract with HACM for a garage even though the tenant did not own a car, the state judge said:
 
 
 44
 "This is a practice that I think shows such flagrant disregard that I can't imagine that anybody would wish to disclose the aspects of these business[ ] transactions in a public place and in a court of law, and it's one of those things that should publicity be given to it[,] it would be almost the basis for criminal prosecution."
 
 
 45
 The appellants' reputation may have been damaged, but if so, it was the result of their attempt to take unfair advantage of their tenants rather than HACM's debarment of them from the Rent Assistance Program. Since the Medleys' claim of a right to participate in the administrative Rent Assistance Program does not fall within the contours of the government contract or employment cases, the debarment does not foreclose opportunities to rent their properties to other tenants and the Medleys have failed to adequately allege damage to their reputation that could be attributed to the defendants, we hold that they do not have a liberty interest in continued participation in the Rent Assistance Program.
 
 
 46
 Even if we were to hold that the Medleys possessed a liberty interest in continued participation in the Rent Assistance Program, it would be of no avail to them, as they received all of the process they were due. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court stated that:
 
 
 47
 "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[4]
 
 
 48
 The second element of the Mathews analysis is decisive here, "the probable value, if any, of additional or substitute procedural safeguards."
 
 
 49
 Each contract that the Medleys executed with HACM provided that they would "not receive any payments or other consideration, from the Family, the PHA, HUD, or any other public or private source, for the unit beyond that authorized in this Contract, and the Lease...." Moreover, the contracts stated that if HACM determined that the Medleys had breached the contracts, HACM would "have the right to terminate this Contract to terminate or reduce assistance payments or to take corrective action to achieve compliance, in its discretion or as HUD directs." In addition, the HUD regulations provide that a landlord may not collect any side payments, even for the use of a garage, without the approval of the Public Housing Authority. "All side payments must be approved by the PHA." HUD Handbook § 9(d). In their affidavits in the record, the Medleys assert that the defendant Johnson, an employee of HACM, informed them that it would be acceptable for them to collect extra money for rental of garage space.[5] But the HUD regulations require official approval of such payments, and the Medleys do not allege that Johnson said they could institute additional charges of rent without gaining official approval. And regardless of what Johnson may have told them, the record contains a letter from William Drew dated October 27, 1983, informing the Medleys that it would be illegal for them to collect any amount of money from Ms. Bush above the charges stipulated in the lease and the contract with HACM. Thus, notwithstanding anything Johnson may have said or not said, the Medleys were on notice that the charging of tenants side payments for the rental of garage space without HACM permission was unacceptable.[6] Nonetheless, the Medleys sought to evict Ms. Bush as well as Ms. Linwood for failing to make the side payments the landlord required. Mrs. Medley's testimony in open court clearly revealed that she and her husband had violated the terms of the contract between them and HACM:
 
 
 50
 "Q [T]his agreement on parking, was that agreement ever approved by the Rent Assistance Program ... ?
 
 
 51
 A No.
 
 
 52
 Q Pardon me?
 
 
 53
 A No, because I think Mrs. Bush had stated that she didn't have a car."
 
 
 54
 The appellants argue that the state eviction proceedings may not be used as a substitute for a due process hearing because they did not receive notice that it might be used as a basis for debarment. This argument ignores our holding in Simmons, 716 F.2d at 1163, where we found that an eviction of a tenant after a bench trial in a Wisconsin court was adequate due process to justify HACM expelling the tenant from the Rent Assistance Program:
 
 
 55
 "Since there is no reason to suppose that the [HACM] is in a better position than a court to determine how many people are living together under one roof or that [the tenant] was prevented from presenting fully to the court her version of the facts, the [HACM] was not constitutionally required to afford her a second hearing before or after it decided to expel her."
 
 
 56
 Id. Our reasoning in Simmons is apropos to the Wisconsin state judge's determination that the Medleys were attempting to collect unauthorized side payments from Ms. Bush and Ms. Linwood. Thus, any process to which the Medleys were entitled was satisfied through the state court eviction proceedings.[7]
 
 IV. WISCONSIN CLAIMS STATUTE
 
 57
 The appellants contend that the district court erred in holding that their claims under Counts Three through Eight against the individual City/HACM defendants as well as the City of Milwaukee and HACM were barred by Wis.Stat. § 893.80 for failure to "properly and timely file a notice of claim." They allege that "[t]he City received a complaint typed and signed by the Medleys on June 18, 1984." The Wisconsin notice of claims statute states:
 
 
 58
 "(1) No action may be brought or maintained against any ... political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe [sic] of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
 
 
 59
 (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the ... political corporation, governmental subdivision or agency and on the officer, official, agent or employe [sic] under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant ... corporation, subdivision or agency or to the defendant officer, official, agent or employe [sic]; and
 
 
 60
 (b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant ... corporation, subdivision or agency and the claim is disallowed .... No action on a claim against any defendant ... corporation, subdivision or agency nor against any defendant officer, official agent or employe [sic], may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect."
 
 
 61
 Wis.Stat. § 893.80 (emphasis added). The statute "requires (1) a 'written notice of the circumstances of the claim' to be given within 120 days after the event giving rise to the claim, and (2) a claim containing 'an itemized statement of the relief sought.' " Figgs v. City of Milwaukee, 121 Wis.2d 44, 49, 357 N.W.2d 548 (1984). While actual notice may be a substitute for written notice if there is no prejudice to the defendant, the actual notice must be received within the same 120 days as the written notice. "The plaintiff has the burden of proving the giving of notice or actual notice and the nonexistence of prejudice." Elkhorn Area School Dist. v. East Troy Community School Dist., 110 Wis.2d 1, 5, 327 N.W.2d 206 (Wis.Ct.App.1982). Constructive notice is not a substitute for actual notice. Id. at 6. The complaint the Medleys allegedly served on the City was in fact (by their own admission) served on HUD. According to the plaintiffs' affidavits, it was their "understanding" that HUD informed the City of the complaint. But as the district court noted, even if HUD did forward the complaint to the City, "at the most [the] complaint could be construed as a notice of injury, and not a notice of claim." Furthermore, even if the Medleys gave appropriate, timely notice under the claims statute, they failed to file the lawsuit within the applicable statute of limitations. Subsection (b) states: "No action on a claim against any defendant ... corporation, subdivision or agency nor against any defendant officer, official, agent or employe[e], may be brought after 6 months from the date of service of the notice...." (Emphasis added). The appellants allegedly filed their notice of claim on June 18, 1984, but they waited until May 10, 1990, to file their action in state court. The appellants clearly failed to comply with the requirements of Wis.Stat. § 893.80.[8]
 
 V. CONCLUSION
 
 62
 Even if a liberty interest might be established through continued participation in a governmental administrative program designed for the benefit of other persons, the Medleys have failed to allege any conduct of the defendants that could reasonably be said to have damaged their reputation. Furthermore, assuming the Medleys' debarment from participation in the Rent Assistance Program infringed on a liberty interest, the Medleys received all of the process they were due when Mrs. Medley testified in open court that they were attempting to collect unauthorized side payments from tenants in the program. There is no reason to believe that an additional hearing before the HACM would have afforded the Medleys additional procedural protection. Thus, we hold that HACM did not violate the Medleys' due process rights in the manner it debarred them from the Rent Assistance Program. In addition, we hold that the district court properly dismissed Counts Three through Eight of the appellants' complaint, as the plaintiffs failed to comply with the time limitations of Wis.Stat. § 893.80. The judgment of the district court is
 
 
 63
 AFFIRMED.
 
 
 
 [1]
 Although the letter spoke of a "permanent bar," the debarment was ended as of December 2, 1988
 
 
 [2]
 The complaint alleged only a deprivation of a property interest, and the Medleys have not appealed the district court's holding that there was no property interest. But the district judge addressed the parties' arguments raised in their district court pleadings about the alleged liberty interest, and all the parties have briefed the liberty-interest issue on appeal. Thus, we shall address it
 
 
 [3]
 It appears that the district court improperly dismissed the City of Milwaukee employees, for the complaint was brought against them in their capacities as employees of the "City of Milwaukee and/or HACM in the Rent Assistance Program." Thus, since HACM was a proper defendant, the individuals acting on behalf of HACM were likewise appropriate defendants. But the district court's erroneous basis for dismissing the City defendants is of small comfort to the Medleys, since, as we demonstrate below, they lose on the merits
 
 
 [4]
 In Mathews, the court held that a hearing prior to termination of Social Security disability benefits was unnecessary because an erroneous deprivation of benefits could be remedied through a post-termination remedy. Id. at 440, 96 S.Ct. at 905. The Medleys' interest in being HACM's channel to provide benefits to tenants in the Rent Assistance Program is certainly less compelling than Eldridge's interest in retaining his disability benefits, which was insufficient to require a pre-deprivation hearing. Cf. Town Court Nursing Center, Inc. v. Beal, 586 F.2d 266, 277 (3d Cir.1978)
 
 
 [5]
 The record contains no response from Johnson concerning this allegation
 
 
 [6]
 It should go without saying that a landlord may not charge a tenant without a car extra rental payments for a garage that the tenant will not use. Such a practice is a rather blatant attempt to side-step the rent controls Congress imposed on Rent Assistance Program participants
 
 
 [7]
 HACM notified the Medleys that they would be barred from future participation in the program at the expiration date of their current contracts, and two of their contracts had over seven months remaining. Thus, the Medleys had time to present their arguments against debarment to HACM prior to the time when they were finally excluded from the program. Moreover, HACM allowed the Medleys to engage in an extended process of appeals/negotiations, which eventually resulted in the Medleys' reinstatement in the program. Given the administrative nature of the program and the limited interest the Medleys possess in participation therein, we are of the opinion that the Medleys did not suffer a lack of due process
 
 
 [8]
 The Medleys further argue that the district court erred in dismissing their third cause of action pursuant to the Wisconsin claims statute because it alleged a violation of 42 U.S.C. § 1983. Although the appellants correctly note that the notice of claims statute is inapplicable to § 1983 actions, see Felder v. Casey, 487 U.S. 131, 138, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988), they have failed to apprise us of how they are entitled to due process of law in HACM's establishment of the amount of rent they may charge for their apartments if they participate in the Rent Assistance Program. "We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991)