In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2653

SHELLEE J. HALL,

*Plaintiff-Appellant*,

*v.*

FOREST RIVER, INCORPORATED,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 04 C 0259—**Robert L. Miller, Jr.,** *Chief Judge.*

———————

ARGUED MAY 14, 2008—DECIDED JULY 30, 2008

———————

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Shellee Hall sued her former employer, Forest River, Inc., for sex discrimination, constructive discharge, and retaliation, under Title VII. The district court granted Forest River summary judgment on the constructive discharge claim and, following the close of Hall's case-in-chief, granted Forest River judgment as a matter of law on the retaliation claim. The sex discrimination claim was submitted to a jury, which returned a verdict in favor of Forest River. Hall appeals, challenging only the district court's decision granting

Forest River judgment as a matter of law on her retaliation claim. We affirm.

**I.**

Forest River manufactures recreational vehicles. Hall began working for Forest River in January 2000 as a quality control inspector in the Quality Assurance Department in Forest River's Goshen, Indiana facility. The Quality Assurance Department is responsible for ensuring that Forest River's products meet certain standards, including the Recreational Vehicle Industry Association standards. Inspectors work on a single production line (or on segments of the line) and are responsible for spotting defects. In addition to inspectors, the Quality Assurance Department employs supervisors known as auditors. Auditors travel from plant to plant and supervise multiple inspectors. John Blair was the manager of Forest River's Quality Assurance Department.

On several occasions, Hall approached Blair and expressed an interest in being promoted to the auditor position. Blair assured Hall that she would be considered for any vacant position, along with other inspectors. On March 11, 2002, Blair promoted Christopher Hare from inspector to auditor. After Blair promoted Hare, Hall "from time to time reaffirm[ed] her desire to become an auditor," and Blair assured Hall that Forest River would consider her for promotion to auditor, "as well as the other folks that have put their names in."

In January 2002, Hall transferred to Forest River's plant in Topeka, Indiana. While at the Topeka plant, a male coworker named John Quake allegedly sexually harassed Hall and another Forest River employee named Monica

Horn. On August 7, 2002, Horn resigned from Forest
River. After Horn resigned, Hall called Blair and asked
to be transferred. Blair initially said that he would think
about it, but Hall called Blair back later and again re-
quested a transfer. As she explained in her trial testimony:

> I explained to him that [Horn] had been there and
> everything that happened to [Horn] and that I told
> [Horn] I would support her if she went further
> with this, and I told [Blair] that I needed to get out
> of that plant because it was going to get heated. I
> didn't know exactly what was going to go down.

In response to Hall's concerns, Blair allegedly told her
"not to stick [her] neck out for anybody." Blair then told
Hall he would work on the transfer and within a week,
on August 16, Forest River had processed a transfer for
Hall from the Topeka plant to the Elkhart, Indiana
plant, effective August 19, 2002.

After her transfer to the Elkhart plant, on August 22,
2002, Hall spoke with Forest River's human resources
director Jeffrey Rowe about Quake's alleged harassment
of her and Horn. Hall met with Rowe the next day and
during this meeting detailed Quake's conduct toward
her and Horn. During her conversations with Rowe,
Hall stated that she intended to stand behind and sup-
port Horn. Rowe instructed Hall "not to talk to anybody
about the situation."

Around the same time that Forest River was investigating
Horn and Hall's complaints, Forest River processed a
payroll-change notice form by which Forest River pro-
moted Leo Akins to the position of auditor. The payroll
change form was dated August 23, 2002, and was ef-
fective August 26, 2002. Rowe had stated in a letter to the

EEOC that "Leo Akins was promoted from quality control inspector to auditor on 8/26/02." At trial, Rowe testified that Forest River had actually decided to promote Akins in late July or early August, when it learned that one of its current auditors intended to return to military service in the fall, but the promotion was not official until August 26, 2002. Rowe explained at trial that he had listed August 26, 2002, as the date Leo Akins was promoted because "the EEOC specifically [said] they wanted to know when they began working as an auditor." Rowe, the HR director, testified about the timing of the promotion. But Blair, not Rowe, was the decision-maker in promoting Akins.

At trial, Blair explained the qualities he believed important for auditors and why he chose Akins over Hall. Specifically, Blair testified that auditors would have to be "self-starter[s]"; they would have to "move from plant to plant"; and would "have to be very conscientious of their work." Also, auditors must "be able to inspect and document." Blair added that

> [t]hey have to be able to keep production and quality separated, and they have to be able to . . . disarm confrontation. They have to be able to talk to plant managers. If there's a heated discussion, they need to calm that down and find the root cause and correct . . . the problem, among other things.

Blair then testified that he promoted Akins because "[h]e could diffuse conflict in a heartbeat. He was very good at that. He came from another corporation that he was a leader in inspection. He had the background and he had the ability, and I felt he was the best person for the job at the time." Blair added that he believed Akins was best-qualified for the auditor position because Akins

> was a leader . . . a self-starter. I could trust him to be where he said he would be or do what he said he was going to do or what I needed done. He was very good at resolving conflict, which I believe that's a big part of an auditor's job. Very technically sound, and I believed he was the best person for the job at the time.

Blair further testified that while Hall was a very good inspector, she failed to separate "production" from "quality" and there were a number of times when she worked on the units she was inspecting. Blair explained that Forest River "need[ed] a separation between production and quality" and that failure to keep the two separate "hinders your objectivity towards the job you're hired to do" as an inspector. Blair also testified that an auditor needed to keep production and quality separate.

In early October, Hall heard a rumor that one of the auditors was leaving Forest River for the military. Hall called Blair and expressed interest in this soon-to-be vacant auditor position. According to Hall, Blair told her he would consider her for the position and did not tell her that he had already promoted Akins. Throughout the rest of October, Hall claimed that she spoke with Blair at least two times per week about the auditor's position and each time Blair told Hall he had not made up his mind. In late October or early November, Hall learned from Akins that he had been promoted when Akins showed up at Hall's facility to help her with a quality control problem. Hall claims that Blair told her that Akins was selected because Hall was a woman, but as noted above, the jury rejected Hall's sex discrimination claim.

After being passed over for a promotion, Hall quit and then sued Forest River under Title VII, alleging sex dis-

crimination in Forest River's failure to promote her, constructive discharge, and retaliation for complaining about Quake's sexual harassment of her and Horn. The district court granted Forest River summary judgment on Hall's constructive discharge claim and the remaining claims proceeded to trial. After the close of Hall's case-in-chief, Forest River moved for judgment as a matter of law on the sex discrimination and retaliation claims. The district court granted Forest River judgment as a matter of law on Hall's retaliation claim, but denied Forest River's motion on her sex discrimination claim. A jury then returned a verdict in favor of Forest River on Hall's sex discrimination claim. Hall appeals, challenging only the district court's decision granting Forest River judgment as a matter of law on her retaliation claim.

## II.

On appeal, Hall argues that the district court erred in granting Forest River judgment as a matter law on her retaliation claim. "This court reviews de novo a district court's grant of judgment as a matter of law." *Staples v. Pepsi-Cola Gen. Bottlers, Inc.*, 312 F.3d 294, 299 (7th Cir. 2002). Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue . . . ." Fed. R. Civ. P. 50(a)(1). In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff. *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). "[A] mere scintilla" of evidence, however, will not

suffice. *Walker v. Bd. of Regents of the Univ. of Wisc. Sys.*, 410 F.3d 387, 393 (7th Cir. 2005).

Hall claims that the totality of the evidence she presented at trial was sufficient to avoid judgment as a matter of law on her retaliation claim. To succeed on a retaliation claim, Hall must present sufficient evidence "(1) that she opposed an unlawful employment practice; (2) that she suffered an adverse employment action; and (3) that the adverse employment action was caused by her opposition to the unlawful employment practice." *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003).

The parties agree that Hall stated her opposition to an unlawful employment practice by complaining about Quake's alleged harassment of her and Horn. Likewise, the parties agree that Forest River's decision not to promote Hall constitutes an adverse employment action. The only issue then is whether Hall presented sufficient evidence of causation to reach a jury.

Hall claims she did. In support of her position, Hall points to the fact that she had worked as an inspector for thirty-two months, while Akins, who had received the promotion and who had not complained about sexual harassment, had only worked as an inspector for sixteen months. Years of experience, however, are not necessarily determinative of qualifications for a promotion. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141-42 (7th Cir. 1998) (upholding grant of summary judgment to an employer on plaintiff's discrimination claim where the plaintiff had more seniority but was passed over for a position because the less-senior employee had superior qualifications for the position). In this case, Hall did not present any evidence that longevity equates to superior qualifications or that Forest River promotes on a basis of seniority. In fact, the record indicates that

longevity was not a factor in promotions. Specifically, the record shows that Hall began working for Forest River in January 2000, and in March 2002 Forest River promoted Chris Hare to the auditor position over Hall, even though Hare had only been working as an inspector since November 2001. Hare's promotion in March 2002 occurred months before Hall complained in August 2002 about Quake's alleged sexual harassment and thus could not be retaliatory. Rather, Hall's failure to be promoted in March 2002, at time when she had approximately twenty-six months of experience to Hare's four months of experience, negates any possible inference that the company believed that Hall's longevity with the company made her more qualified for a promotion than other inspectors. *See Hancock v. Potter*, 07-1589, *2, 4-5 (7th Cir. 2008) (holding that the plaintiff did not present sufficient evidence that her employer had retaliated against her by not recommending her for a management training program, where the employer had also not recommended the plaintiff for the training program several months before the plaintiff had expressed opposition to an unlawful employment practice). Federal anti-discrimination laws also were "not intended to legislate seniority rights where none exist in the contract of employment." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1217 (7th Cir. 1985). Accordingly, the fact that Hall had sixteen more months of experience than Akins is insufficient to support a jury finding of retaliation.

Moreover, at trial, when asked on cross-examination whether Akins was less qualified, Hall responded "No, I can't say that." And when asked whether she could say that she was as qualified as Akins, Hall replied: "No." Hall points out that she had also stated that she believed

that she was just as qualified as Mr. Akins. However, an employee's own subjective belief that she is as qualified or more qualified than another applicant is insufficient. *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007). "We have repeatedly stated . . . that plaintiffs must offer more than mere self-serving appraisals." *Id. See also*, *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir. 2001) (stating that the plaintiff "must present more than his own, subjective self-appraisal to create a genuine issue of fact"). Thus, Hall's testimony is insufficient to create an inference of retaliation.

Forest River believes this testimony ends the case, arguing that to reach the jury, Hall needed to present evidence that Akins "was not better qualified." Without such evidence, Forest River posits, Hall could not present a prima facie case of retaliation.

This court has held in the failure-to-promote context that to establish a prima facie case of discrimination under the indirect method of proof, i.e., the *McDonnell Douglas* method, that, among other things, a plaintiff must establish "the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). However, as we have explained on several occasions, once evidence has been presented at trial, the burden-shifting of the *McDonnell Douglas* method falls away, and the question is simply whether that evidence is sufficient to allow a reasonable jury to find in favor of the plaintiff. *Shank v. Kelly-Springfield Tire Co.*, 128 F.3d 474, 478 (7th Cir. 1997) ("We must assess the evidence in its entirety. After completion of trial, the prima facie case requirement falls away and the sole remaining issue is whether age was a

determining factor in the termination."). Thus, at this stage, Hall's failure to establish the prima facie case required under the indirect method is not dispositive.[1]

Of course, Hall must still present sufficient evidence of retaliation to reach a jury, but, as noted above, this requires Hall to present sufficient evidence "(1) that she opposed an unlawful employment practice; (2) that she suffered an adverse employment action; and (3) that the adverse employment action was caused by her opposition to the unlawful employment practice." *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003). Hall need not establish that Akins was not better qualified to succeed on a retaliation claim.

---

[1] In arguing that Hall cannot reach the jury without establishing a "prima facie case," Forest River wrongly equates two distinct meanings of "prima facie case." On the one hand, "prima facie case" means those elements of a cause of action a plaintiff must establish to prevail. However, in the discrimination context, the phrase "prima facie case" is more typically used to mean the initial burden the plaintiff must satisfy under the *McDonnell Douglas* indirect burden-shifting method of proof. It is in the latter context that our case law has stated a plaintiff in a failure to promote case must present evidence that the employer granted the promotion to someone outside the protected group who was not better qualified. Absent such proof, however, a plaintiff may still establish a "prima facie case" of retaliation under the direct method. In other words, a "prima facie case" of retaliation (meaning the elements of a cause of action a plaintiff must establish to prevail) may be proven by either the direct or the indirect (i.e., *McDonnell Douglas*) method, and each method has its own prima facie case. *See Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).

Forest River responds that Title VII only prohibits discrimination and retaliation and does not give those who oppose an unlawful employment practice better rights, which would be the case if employees have a right to be promoted over someone who is better qualified. *See* Appellee's Br. at 9. We are not saying, however, that Forest River must promote someone because they opposed unlawful employment practices; what we are saying, though, is that Forest River cannot deny someone a promotion *because* they opposed an unlawful employment practice. In most cases, employers promote the best qualified employee, and if that practice results in someone being promoted over an individual who had objected to an unlawful employment practice, there is no basis for a retaliation claim. However, if an employee could show that he would have been promoted even though another candidate was better qualified, but that the employer did not promote him *because* he opposed an unlawful employment practice, the employee can establish a retaliation claim.

The question then remains whether Hall presented sufficient evidence of retaliation, or more specifically, causation, to reach a jury. We have already rejected Hall's claim that her greater seniority as an inspector, when compared to Akins, is evidence of retaliation because there is no evidence that Forest River promotes based on longevity as an inspector. *See supra* at 7-8. Hall also claims the timing of the promotion decision is sufficient evidence of causation to reach a jury. Forest River promoted Akins on August 26, 2002, and several times shortly before then (August 16, 22, and 23), Hall had told Rowe and Blair she would support Horn in her sexual harassment complaint. However, the mere fact that one

event preceded another does not prove causation. *Burks v. Wisconsin Dept. of Trans.*, 464 F.3d 744, 758-59 (7th Cir. 2006). This general principle is especially true when the claimed retaliation is the failure to promote, because the timing of a promotion is controlled by current or forthcoming vacancies which are beyond an employer's control, unlike firing or other types of retaliatory actions where the timing is in the hands of the employer. Thus, a plaintiff must do more than merely point to the temporal link; rather, the plaintiff must put forth other evidence that suggests that the protected activities were related to the employer's decision. *Id*.

Hall fails in this regard as well. None of the evidence to which Hall points indicates that Hall's complaints about Quake and her support of Horn were related to Forest River's promotion of Akins. For instance, Hall claims that "Blair and Rowe's repeated inquiries to Hall (four times between them) about whether she intended to support Horn" are evidence of causation. Appellant's Reply Br. at 5. While Hall testified that Rowe had asked her if she would stand behind Horn, Rowe was not a decision-maker and therefore his inquiry about whether Hall intended to support Horn is irrelevant to the question of whether Blair retaliated against Hall. *See Sembos v. Philips Comp.*, 376 F.3d 696, 703 n.6 (7th Cir. 2004). Regarding Blair, Hall fails to cite any record evidence indicating that Blair likewise asked her if she intended to support Horn. Specifically, while Hall cites her own trial testimony about Blair's involvement in the investigation, in that testimony she did not claim that Blair had asked her whether she intended to support Horn. *See* Appellant's Br. at 9-10. Rather, the record citations Hall points to merely have her testifying that Blair told her that Rowe

would be contacting her about the Horn incident and then asking her what she intended to tell Rowe. Then, after the meeting with Rowe, Hall testified that Blair asked her what the meeting was and what she had told Rowe.[2] There is nothing impermissible or suspicious about a supervisor asking an employee for details about a claimed incident of sexual harassment that occurred within his department, and this testimony does not indicate that Blair was questioning or challenging Hall about her intent to support Horn.

Hall next points to Rowe meeting with her off-site to discuss the harassment complaints, Rowe asking her which co-workers may have overheard her conversation with Horn, and directing Hall not to discuss the alleged harassment with anyone else. Again, because Rowe was not involved in the decision to promote Akins, his conduct is completely irrelevant. *Sembos*, 376 F.3d at 703 n.6. However, even if Rowe were a decision-maker, none of these facts indicates a retaliatory motive, but rather is a typical investigative technique properly employed by a human resource department in investigating a complaint of sexual harassment.

---

[2] In her trial testimony Hall said that Blair told her that Rowe "wanted to speak to me about the [Horn] incident and he wanted to know what I was going to tell [Rowe], and I told him that I was going to tell him everything I knew and I was going to stand behind [Horn]." Hall further testified that after the meeting Blair "asked me what the meeting [with Rowe] was, and I basically told him what was going on. And he asked me what I told Jeff Rowe, and I told him that I was going to support [Horn] in any decision that she made with this."

Additionally, Hall points to the contradiction between Rowe's letter to the EEOC that Forest River promoted Akins on August 26, 2002, and discovery responses and trial testimony that Forest River had decided to promote Akins in late July/early August 2002. Rowe explained this contradiction at trial, but even disregarding Rowe's explanation, this contradiction does not bear on the question of causation. Whether Forest River contradicted itself about the timing of the promotion does not indicate that Blair rejected Hall because of her protected activity. Hall also claims Blair's failure to tell her that he had already promoted Akins was circumstantial evidence of retaliation. Again, this fact does not speak to Blair's motivation in promoting Akins. Finally, Hall points to Blair's alleged statement that she should not stick her neck out. Blair's comment, however, was made during a conversation in which Hall requested a transfer, stating that she was going to support Horn and "needed to get out of that plant because it was going to get heated. I didn't know exactly what was going to go down." Blair's response that Hall should not stick her neck out was coupled with prompt action to secure Hall the requested transfer. In this context (a context provided by Hall herself in her trial testimony), this comment did not project that Forest Hill intended to retaliate against her.

We stress that in considering the propriety of judgment as a matter of law, we must consider the totality of the record. The record, as a whole, includes undisputed evidence that Forest River considered Akins the most qualified candidate for the promotion. Blair testified that he chose Akins for the auditor position because he "could diffuse conflict in a heartbeat," was a "self-

starter," and followed through on his assignments. Blair also testified that auditors needed "to be able to keep production and quality separated," and that on several occasions, while working as an inspector, Hall improperly took over production work as opposed to focusing on quality, and this could impair objectivity. Hall did not present any evidence calling into question Akins' superior qualifications or Blair's relative assessment of Akins and Hall's qualifications. Without some evidence of pretext or evidence that Forest River retaliated against her, Hall cannot prevail as a matter of law. *See Hall v. Gary Comm. Sch. Corp.*, 298 F.3d 672, 675 (2002) (holding that district court properly granted employer judgment as a matter of law following jury's verdict in plaintiff's favor where plaintiff did not offer evidence showing the reasons given by his employer were not worthy of credence or other evidence showing retaliation). *See also Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 863 (7th Cir. 2007) (holding that district court properly granted employer judgment as a matter of law on plaintiff's sex discrimination claim because there was no direct evidence that the employer's reasons for firing her "were pretexts unworthy of belief"); *Staples*, 312 F.3d at 299 (holding that district court properly granted employer judgment as a matter of law because the evidence was not sufficient to permit the jury to conclude that the termination was racially motivated or that the employer's reason for the discharge was unworthy of credence); Accordingly, the district court properly granted Forest River judgment as a matter of law on Hall's retaliation claim.

### III.

In order to avoid judgment as a matter of law, Hall needed to present sufficient evidence of causation to support a jury's verdict of retaliation. Hall failed to do so, however, pointing instead to evidence irrelevant to the issue of causation or insufficient as a matter of law to support a jury verdict in light of the undisputed evidence that Forest River believed another candidate was better qualified for a promotion. For these and the foregoing reasons, we AFFIRM.